```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COZEN O'CONNOR, P.C.          :        CIVIL ACTION
                              :
      v.                      :
                              :
RICHARD S. FISCHBEIN          :        NO. 09-4931
```

                            MEMORANDUM

Dalzell, J.                                     March 16, 2010

       Plaintiff law firm Cozen O'Connor, P.C. ("Cozen"), filed this breach of contract action against former partner Richard Fischbein ("Fischbein") for allegedly failing to repay $250,000 in loans that the firm made to him while he was with Cozen.  Fischbein moves to dismiss Cozen's complaint for lack of personal jurisdiction and/or improper venue, or, alternatively, to transfer the case to the Southern District of New York.  For the reasons set forth below, we will grant defendant's motion in part, deny it in part, and transfer this action to the Southern District of New York.

**I.    Factual Background**

       On or about March 21, 2005, defendant Fischbein became a "Senior Member" of Cozen, a Pennsylvania professional corporation, pursuant to the terms of a March 15, 2005 employment agreement (the "Agreement"), which was negotiated in

Pennsylvania.[1]  Compl. at ¶ 5.  Fischbein was to work in the Business Litigation Department of the firm's "soon to be opened office" at the 909 Third Avenue address in New York City where Fischbein's former law office was. Mot. to Dismiss Ex. B at 1.

During Fischbein's first two fiscal years of employment, Cozen agreed to extend loans to him up to $500,000 subject to the terms set forth in the Agreement.  Compl. at ¶ 7.  In each of Fischbein's first two years at the firm, Cozen could loan him up to $250,000, as he requested.  Compl. at ¶ 8.  Under the Agreement, Fischbein would either repay the loan through a setoff against any performance bonuses he earned in the year in which Cozen lent him money, or, if the amount of his performance bonuses did not repay the loan in full, then the unpaid balance would become a three-year term loan.  The three-year term loan would be payable in thirty-six equal monthly installments,

---

[1]Fischbein disputes this fact in his affidavit, which he submitted with his motion to dismiss.  Fischbein avers that all of the negotiations and discussions with Cozen regarding the employment agreement took place in New York.  Affidavit of Richard S. Fischbein in Support of Mot. to Dismiss ("Fischbein Reply Affidavit") at ¶ 20.  Fischbein also avers that he signed the contract in New York.  Id. at ¶ 22.  Cozen does not dispute this.  Cozen also agrees that Stephen Cozen traveled to New York "a number of times during the process of finalizing the terms of the Agreement." Pl. Mem. of Law in Opp. To Mot. to Dismiss, Ex. 2, Declaration of Stephen A. Cozen at ¶ 5.

together with interest on the unpaid balance at the prime rate, as published on the first business day of each month in <u>The Wall Street Journal</u>, accruing from the date the loan would have been repaid out of Fischbein's performance bonus for that year. Compl. at ¶ 9.

During 2005, his first year at Cozen, Fischbein borrowed $250,000 from the firm.  Compl. at ¶ 10.  Fischbein requested "draws" of $50,000 as personal loans under the Agreement on May 3, June 1, July 13, August 11, and September 12, 2005.  Compl. at ¶¶ 11, 13, 15, 17, 19.  On May 4, June 6, July 20, August 15, and September 16, 2005 Cozen issued $50,000 checks to Fischbein, which Fischbein cashed and accepted.  Compl. at ¶¶ 12, 14, 16, 18, 20.

On June 2 of the following year, Cozen terminated Fischbein's employment with the firm.  Compl. at ¶ 21.  On August 31, 2006, Cozen notified Fischbein that since no performance bonus was due to him, the loan -- which at that point totalled $250,000 in principal -- was due to be repaid in thirty-six installments with the first installment due by July 1, 2006.  Compl. at ¶¶ 22-23.  Fischbein never paid that, or any other, installment on the loan.  Compl. at ¶¶ 25, 27.  The outstanding balance on the loan, including principal and interest as of

October 1, 2009, was $313,873.33.  Compl. at ¶ 31.  Cozen alleges breach of contract against Fischbein.  Compl. at ¶¶ 32-37.

## II. Analysis

As noted, Fischbein moves to dismiss Cozen's claim pursuant to Fed. R. Civ. P. 12(b)(2) and (3) or, in the alternative, to transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404.

### A. Personal Jurisdiction

Pursuant to Rule 12(b)(2), once a defendant has raised a jurisdictional defense, the plaintiff bears the burden of demonstrating a prima facie case that defendant has sufficient contacts with the forum state to establish personal jurisdiction.  North Penn Gas v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990).  "The plaintiff must sustain its burden of proof through sworn affidavits or other competent evidence."  Id. (internal quotation marks omitted).  A court "reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992), see also Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002).

A plaintiff may not rely on bare pleadings, however, but must respond with actual proof once the motion is made. Patterson v. Fed. Bureau of Investigation, 893 F.2d 595, 603-4 (3d Cir. 1990).

Rule 4(e) of the Federal Rules of Civil Procedure authorizes a district court to exercise personal jurisdiction over a non-resident defendant to the extent allowed by the long-arm statute of the state in which the court sits. Provident Nat'l Bank v. Cal. Fed. Sav. and Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987). Pennsylvania's long-arm statute establishes personal jurisdiction over a non-resident defendant to the fullest extent the Due Process Clause of the Fourteenth Amendment allows. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001).

Personal jurisdiction may exist under either general jurisdiction or specific jurisdiction. General jurisdiction exists where a defendant has had "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Specific jurisdiction exists where the plaintiff's cause of action arises out of the defendant's contact with the forum state such that the defendant "should reasonably anticipate being haled into court" in that forum. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The constitutionality test for specific jurisdiction has two parts.  First, the defendant must have had constitutionally sufficient "minimum contacts" with the forum state.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).  Second, exercising jurisdiction must also comport with "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Satisfaction of the first prong depends on whether the defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  "Due process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised."  Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993).

In determining whether a court in Pennsylvania has specific jurisdiction over a defendant for a breach of contract claim, a court must consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing."  Remick, 238 F.3d at 256.  Our Court of Appeals has stated that it takes a "highly realistic" approach to

6

analyzing minimum contacts, and that it looks to, "inter alia, prior negotiations and contemplated future consequences, along with the terms of the contract...." Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993)(internal quotation marks and citations omitted)(citing Mellon Bank (East) PSFS, National Association v. Farino, 960 F.2d 1217 (3d Cir. 1992)).

Fischbein argues that we do not have personal jurisdiction over him because he is a resident of the State of New York, does not do business in Pennsylvania, does not maintain an office in Pennsylvania, and does not own any property in Pennsylvania. Fischbein Reply Affidavit at ¶¶ 3-4, 6, 26.

In its response to the motion to dismiss, Cozen argues that we have both specific and general jurisdiction over Fischbein. As proof that we have specific jurisdiction over Fischbein, Cozen submits with its response the declarations of Stephen A. Cozen, one of the primary representatives of Cozen involved in negotiating the Agreement with Fischbein, and Thomas A. Decker, the Chief Executive Officer of Cozen, who were both involved in the 2009 negotiations with Fischbein to arrange the terms of the repayment of the loan set forth in the Agreement. Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss, Ex. 2, 3.

Mr. Cozen declared, under penalty of perjury, that he had many discussions by phone, email and in person with Fischbein regarding the terms of Fischbein's employment and the terms of the loan, all in Philadelphia.  Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss, Ex. 2 at ¶ 5.  Mr. Cozen also reported that the negotiations of the "terms relating to the loan advances, along with the other economic terms of Mr. Fischbein's employment, were conducted in part, in Philadelphia by me and others, when Mr. Fischbein was physically present in Philadelphia in or about January and/or February of 2005."  Id. at ¶ 7.  In addition, Mr. Cozen declares that he personally met with Fischbein at the Four Seasons Hotel in Philadelphia, and that at that meeting "Fischbein acknowledged that he owed Cozen over $250,000, plus interest."  Id. at ¶ 8.

     Mr. Decker declares that Fischbein had multiple telephone conversations, and exchanged letters and emails with him and other Cozen representatives in Philadelphia.  Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss, Ex. 3 at ¶ 5.  Mr. Decker submits that Mr. Fischbein called him at his office in Philadelphia on July 9, 2009 "to complain that the negotiation of the terms of a compromise were not favorable enough to him..." Id. at ¶ 7; Ex. A to Ex. 3.

We find that Fischbein had sufficient minimum contacts with Philadelphia and thus with this forum. He directed to Philadelphia at least five letters (Compl. Ex. B, Ex. D, Ex. F, Ex. H, Ex. J) and one phone call (Decl. Of Thomas A. Decker at ¶ 7). Those contacts were directly related to the subject of this litigation -- first, to obtain the loans pursuant to the Agreement, and second to discuss the loans and a more favorable arrangement in which to repay them. The alleged breach was certainly part of the "contemplated future consequences" both parties considered upon entering into the Agreement. Indeed, as Fischbein himself claims, "[p]laintiff's breach of contract claim directly arises out of this [employment] Agreement." Mem. of Law in Support of Def.'s Mot. to Dismiss at 10. Thus, Fischbein has deliberately and personally directed significant activities toward this venue. This action arises directly out of the contacts at issue here. "Where the contacts evaluated are those that give rise to the litigation, even one contact with the forum may be enough to justify jurisdiction as long as the other criteria are met." Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993)(citing Burger King, 471 U.S. at 477).

To decide the second prong of the specific jurisdiction

9

test, courts may consider a variety of factors such as the burden on defendant, the interests of the forum state, plaintiff's interest in obtaining relief, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies.  Id.  However, "the burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy.  Once the plaintiff has made out a prima facie case of minimum contacts...the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Id. (internal quotation marks omitted).

In Fischbein's affidavit, which he submitted with his motion to dismiss, he avers that "[i]t would be both a financial, personal and professional hardship for me to have to defend this action in Pennsylvania."  Fischbein Reply Affidavit at ¶ 27.  He argues in his reply brief that the advances were to be repaid for services rendered in New York, all of the work performed under the contract occurred in New York, and New York has the greatest interest in protecting its citizens and in adjudicating this action.  Reply Mem. of Law In Further Support of Defendant's Mot. to Dismiss, at 7.  This argument does not persuade us with regard to jurisdiction -- it is clear that we do have personal

jurisdiction over Fischbein -- but we find it persuasive with regard to venue, which we will discuss in the next section.

Because we find that we have specific jurisdiction over the defendant, we need not address whether we have general jurisdiction over him as well. We will deny the motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2).

### B. Venue

Fischbein moves to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue or, alternatively, to transfer the case pursuant to 28 U.S.C. § 1404.

For diversity jurisdiction actions, 28 U.S.C. § 1391(a) dictates that venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(3), the burden is on the defendant to show that venue is improper. Myers v. American Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982).

We resolved the factual dispute of whether Fischbein met with Cozen in Philadelphia on one or more occasions in favor of Cozen. Thus, we find that at least one of the events related to this action happened in Pennsylvania, and therefore we disagree with Fischbein that the matter should be dismissed under Rule 12(b)(3). But although venue lies in this district as well as in the Southern District of New York, we agree with Fischbein that venue is better in New York because most of the events or omissions occurred there. Indeed, Cozen not only hired Fischbein to perform services in New York, but took over Fischbein's former law office suite on Third Avenue. Fischbein signed the Agreement in New York and rendered his services in that City. Fischbein allegedly breached the contract in New York. While Fischbein had sufficient contacts with Pennsylvania to confer personal jurisdiction in this district, the fact remains that much of this drama did not happen in this district but did in the Southern District of New York.

Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To transfer the case under 28 U.S.C. § 1404(a), we are not limited to considering the factors

enumerated in § 1404(a), but "should consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer," Baez v. Prison Health Services, Inc., No. 06-4923, 2009 WL 2776535, at *3 (E.D. Pa. Aug. 27, 2009)(Shapiro, J.)(citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)).

We balance the Jumara factors by first noting that Cozen prefers this forum, but Fischbein prefers the Southern District of New York. The claim indubitably arose in New York. Cozen maintains two offices in New York City, leading us to conclude that litigating this action in New York will not inconvenience Cozen.[2] By contrast, Fischbein maintains no offices in Pennsylvania, so it certainly will be inconvenient for him to litigate here. Witnesses will have no trouble appearing in either forum, and books and records can readily be produced in both. New York has the greater interest in regulating contracts

---

[2]Cozen's Downtown office at 45 Broadway is less than two miles from the Foley Square Courthouse, a six minute cab ride or a fifteen minute walk. See http://maps.google.com/maps?hl=en&tab=wl. Interestingly, the walk to this Courthouse takes eleven minutes longer from Cozen's 1900 Market Street office than the walk from 45 Broadway to the Foley Square Courthouse. See http://maps.google.com/maps?hl=en&tab=wl.

executed, performed, and allegedly breached in New York.  Taken together, the balance of convenience and justice tips in favor of New York.

In sum, while we do not lightly disturb a plaintiff's choice of venue, the links to this district here are tenuous at best.  We will therefore deny Fischbein's motion to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(3), but will grant his motion to transfer the action to the Southern District of New York pursuant to § 1404(a).